Robert S. MOZUR

v.

Thomas K. TURNAGE.

Civ. A. No. 87–7051.

United States District Court,
E.D. Pennsylvania.

Jan. 11, 1990.

Eric J. Fischer, Disability Law Center of Fischer & Walkenhorst, Philadelphia, Pa., for plaintiff.

Catherine L. Votaw and James G. Sheehan, Asst. U.S. Attys., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DuBOIS, District Judge.

Plaintiff Robert S. Mozur is a World War II veteran who received Veterans Administration ("VA") disability compensation benefits from 1944 to 1957 for a nervous disorder which the VA determined was "service incurred." In 1957 these benefits were terminated after the VA reexamined Mr. Mozur's case and concluded that his nervous disorder was not service-incurred but, rather, preexisted his military service. After numerous efforts by Mr. Mozur at both the administrative and federal district court levels to challenge this conclusion, the VA, on June 8, 1988, agreed that plaintiff's disorder was service incurred and awarded, pursuant to 38 U.S.C. § 3010(i)[1] and 38 C.F.R. 3.400(g)[2], disability payments back to June 14, 1984.

In plaintiff's present suit against Thomas K. Turnage, Administrator of Veterans Affairs[3], he alleges that he is entitled to disability compensation benefits back to 1957. The defendant has moved to dismiss or, in the alternative, for summary judgment, and the plaintiff has moved for summary judgment. For the reasons given below, Defendant's Motion to Dismiss will be granted on the ground this Court lacks subject matter jurisdiction over plaintiff's claims.

### I.

Plaintiff was inducted into the Army Air Corps (now known as the Air Force) on December 22, 1942. He was first diagnosed with a mental impairment—"psychoneurosis, mixed type severe"—in 1943 during a period of active military service. On June 28, 1943, he was given a disability discharge from the service under honorable conditions. In 1944 plaintiff applied for

---

1. See note 7 *infra* for text.

2. See note 8 *infra* for text.

3. Plaintiff had originally filed suit against both Thomas Turnage and Verne Orr, Secretary of the Air Force, but the suit against Mr. Orr was dismissed.

and received service-connected disability compensation benefits pursuant to 38 U.S.C. § 310.

Plaintiff continued to receive service-incurred disability benefits until July 6, 1956, at which time the VA reevaluated plaintiff's case. Upon such review, the VA Rating Board, on January 15, 1957, terminated plaintiff's service-incurred disability benefits[4], concluding that plaintiff's nervous condition was not incurred in or aggravated by his service in WWII.

In an attempt to persuade the VA to reinstate service-incurred disability benefits, plaintiff submitted further documentary evidence to the VA and filed an appeal with the Board of Veteran Appeals (BVA). The BVA upheld the Rating Board decision and notified plaintiff of this on August 15, 1957.

Between 1957 and 1980 plaintiff continued to submit additional evidence in an attempt to have the Rating Board decision reversed; however, he did not formally attempt to reopen his claim.[5] During this period, the VA Rating Board consistently ruled that the evidence submitted by the plaintiff was not new and material evidence necessary to reopen the claim.

On January 14, 1980, and with the assistance of counsel, plaintiff formally sought to reopen his claim. The Rating Board ruled that there was no new and material evidence which would justify such a reopening. After an appeal by plaintiff, the Board confirmed this decision. On June 24, 1981, the BVA agreed to review the case *de novo*, and on January 15, 1982, it affirmed the Rating Board decision.

Thereafter, because statements in plaintiff's Air Force records were relied upon by the BVA in its decision to deny benefits, plaintiff applied to the Air Force to correct his military records so as to state that his nervous disorder was service connected. The Air Force initially refused to make this correction; consequently, plaintiff brought suit in federal district court. The district court ruled that the Air Force had failed to evaluate properly the relevant evidence and remanded the matter for further agency evaluation. *Mozur v. Orr*, 600 F.Supp. 772 (E.D.Pa.1985). Thereafter, the Air Force Board for Correction of Military Records (BCMR) reexamined plaintiff's claims and determined that his nervous disorder did not exist prior to service. Instead of formally expunging plaintiff's record, however, the Air Force corrected his military record through a written summary.

On June 10, 1985, after the military record was corrected, plaintiff once again requested a reopening of the VA's decision to discontinue his service-incurred disability benefits. The Rating Board concluded that the BCMR decision did not, in and of itself, establish plaintiff's entitlement to service-incurred disability benefits; consequently, on November 14, 1985, the Rating Board confirmed its prior decision that plaintiff was not deserving of such benefits. Shortly thereafter, the plaintiff received two letters from the VA in which plaintiff was told that the BCMR had determined that plaintiff's mental disorder existed prior to service.

Plaintiff then appealed to the BVA which issued a decision remanding for clarification as to which entries in the service records were changed by the BCMR decision. At that time the plaintiff also contacted the Air Force and requested that it issue him a new formal discharge and/or delete references in his military record inconsistent with its prior corrective action. When this request was refused, plaintiff, on November 4, 1987, brought this action against both the Administrator of the VA and the Secretary of the Air Force. He requested that this Court hold the VA's practices unconstitutional, issue an injunction requiring the Air Force to expunge plaintiff's record, and issue an injunction

---

4. Plaintiff continued to receive benefits from the VA as a disabled indigent under the VA pension program pursuant to 38 U.S.C. § 502 et seq.

5. This failure may have been caused, in part, by plaintiff's difficulty in securing for an extended period a representative to help him challenge the VA's determination. It is also likely that plaintiff was hampered by his psychiatric disability.

requiring the VA to reevaluate plaintiff's claim for service-incurred disability benefits.

On November 10, 1987, the Air Force formally deleted reference to its early conclusion that plaintiff's disorder existed prior to service. The parties subsequently agreed to dismiss the suit against the Secretary of the Air Force.

On December 2, 1987, the Rating Board once again confirmed its decision to deny service-incurred benefits to the plaintiff on the basis that the BCMR's correction constituted a conclusion of law, and that this correction did not change any hard evidence upon which the prior Rating Board decisions had been based. However, by memorandum of January 21, 1988, the Regional Director of the VA referred plaintiff's case to the Director of the Compensation Service of the VA pursuant to 38 C.F.R. § 3.105(b). The Regional Director did so upon the belief that although the decision to deny plaintiff service-incurred benefits was not clearly erroneous, the evidence could present a reasonable doubt as to whether plaintiff's disorder existed prior to service.

On March 1, 1988, the VA filed its Motion to Dismiss or for Summary Judgment. The VA argued, among other things, that plaintiff's case must be dismissed because 38 U.S.C. § 211(a) [6] "preclude[s] judicial review of the VA's decisions implementing veteran's benefit programs." (Defendant's Motion to Dismiss at 7). On March 30, 1988, plaintiff filed his first Motion for Summary Judgment. The crux of plaintiff's argument was that the VA's repeated failure to follow its own regulations violated his right to procedural due process, and that the jurisdictional bar of § 211(a) did not apply to such a constitutional attack.

On June 8, 1988, the VA reconsidered plaintiff's case and determined that plaintiff's service-incurred disability payments should be reinstated. However, the defendant also concluded that plaintiff was only entitled to retroactive benefits to June 14, 1984, one year prior to the last reopening request. The VA based its decision to limit retroactive benefits upon 38 U.S.C. § 3010(i) [7] and 38 C.F.R. § 3.400(g) [8], both of which mandate that a reinstatement of benefits due to correction of a military record can be retroactive for no more than one year from the date of the reopening of the disallowed claim.

On August 9, 1988, plaintiff filed his Second Motion for Summary Judgment challenging the VA's decision to limit retroactive relief. Specifically, plaintiff contends that the limits on retroactive relief invoked by the VA do not apply to him because the reinstatement of benefits in his case was not " 'established' by military 'correction' " but, rather, was " 'estab-

---

6. 38 U.S.C. § 211(a)(1) states:

The Administrator shall decide all questions of law and fact necessary to a decision by the Administrator under a law that affects the provision of benefits by the Administrator to veterans or the dependents or survivors of veterans. Subject to paragraph (2) of this subsection, the decision of the Administrator as to such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

7. 38 U.S.C. 3010(i) reads in relevant part:

Whenever any disallowed claim is reopened and thereafter allowed on the basis of new and material evidence resulting from the correction of the military records of the proper service department under section 1552 of title 10, or the change, correction, or modification of a discharge or dismissal under section 1553 of title 10, or from other corrective action by competent authority, the effective date of commencement of the benefits so awarded ... in no event shall ... be retroactive for more than one year from the date of reopening of such disallowed claim.

8. 38 C.F.R. 3.400(g) states in relevant part:

Where entitlement is established because of the correction, change, or modification of a military record, or of a discharge or dismissal, by a Board established under 10 U.S.C. 1552 or 1553, or because of other corrective action by competent military naval, or air authority, the award will be effective from the latest of these dates:

(1) Date application for change, correction, or modification was filed with the service department, in either an original or disallowed claim;

(2) Date of receipt of claim if claim was disallowed; or

(3) One year prior to date of reopening of disallowed claim.

lished' by plaintiff's prior evidentiary submissions to the defendant." (Plaintiff's Second Motion at 46).

## II.

The threshold question that must be resolved is whether § 211(a)'s bar against judicial review of "all questions of law and fact necessary to a decision by the Administrator under a law that affects the provision of benefits by the Administrator to veterans ...," 38 U.S.C. § 211(a), extends to plaintiff's claim that the limitations on retroactive money damages contained in 38 U.S.C. § 3010(i) and 38 C.F.R. 3.400(g) do not apply to him.

The Supreme Court has repeatedly acknowledged "the strong presumption that Congress intends judicial review of administrative action." *Traynor v. Turnage*, 485 U.S. 535, 108 S.Ct. 1372, 1378, 99 L.Ed.2d 618 (1988), quoting, *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 2135, 90 L.Ed.2d 623 (1986). This presumption may be overcome "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent." *Traynor*, 108 S.Ct. at 1378, quoting, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

The area of veteran's benefits legislation, however, is one in which the Supreme Court has found a clear legislative intent to narrow jurisdiction. It has ruled that § 211(a) insulates from review "decisions [of the VA] made in interpreting or applying a particular provision of th[e] statute [administered by the VA] to a particular set of facts." *Traynor*, 108 S.Ct. at 1379. In an attempt to clarify the scope of § 211(a)'s ban, the Court has held that it does not apply to constitutional challenges to veterans' benefits legislation, *see Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), nor to claims that VA regulations are invalid because they conflict with other legislation, *see Traynor v. Turnage, supra.* In so holding, the Court reasoned that Congress did not intend to preclude judicial review of these types of challenges because review would not frustrate the two principal purposes of § 211(a): (1) ensuring that veterans' benefit claims will not burden the courts, and (2) ensuring that technical and complex determinations and applications of VA policy will be adequately and uniformly made. *See Traynor*, 108 S.Ct. at 1379.

Applying the rational of § 211(a) and the foregoing cases leads to the inescapable conclusion that there is no subject matter jurisdiction in this case. Exercising jurisdiction over plaintiff's challenge to the VA's interpretation and application of 38 U.S.C. 3010(i) and 38 C.F.R. 3.400(g) would frustrate the purposes of § 211(a). Essentially plaintiff argues that this court should reverse the VA's application to his case of the limitation on retroactive damages because the reinstatement of his benefits was established by prior evidentiary submissions and not by correction of his military record. Plaintiff's challenge involves the application of two particular provisions to a particular set of facts and, as such, lies at the heart of § 211(a)'s bar. The argument which plaintiff makes against the application of the limitations to his case could be made by any similarly situated claimant; hence, a finding that jurisdiction exists in cases like plaintiff's would create a substantial burden for the federal courts. Plaintiff's challenge also involves the question of when a reinstatement is "established" by "correction" of a military record, a technical matter within the particular expertise of the VA.

For the reasons stated above, the Court concludes that 38 U.S.C. § 211(a) precludes it from reviewing the decision of the VA to limit, pursuant to 38 U.S.C. § 3010(i) and 38 C.F.R. 3.400(g), its award of retroactive benefits to plaintiff. Because of this lack of subject matter jurisdiction, the Court will grant defendant's Motion to Dismiss and deny plaintiff's Motion for Summary Judgment and Second Motion for Summary Judgment.